Your Honor, justices of the panel, and if it pleases this Court, I'm Treva Hearn on behalf of the plaintiffs, my co-counsel Valerie Edwards of Keller Nebaker of Phoenix, Arizona. We will indeed be splitting the time. I will speak to the issues of general wrongful foreclosure and the MDL, as I believed it was prejudicial to the plaintiffs. For the appellants, we've got two lawyers, and for the appellees, we've got four. Well, actually, everyone here except Valerie and I are with them, but I believe only four are sitting. When we get to the response, we've got four people splitting the 20 minutes, so you're only 10 and 10. That's easy. Seven and three, seven and three, if that's appropriate. So we have a reply, Your Honor. Thank you. On the other side, right? Wait a minute. I've got defendants, appellees, I've got four lawyers arguing. Correct. And they're coming next. Yes. And I've got plaintiffs, appellants now. Correct. And you've got 20 minutes, and you're splitting that between the two of you? Yes, so it would be seven each for the opening and then three reserved for reply. Oh, I see. That's where the three's coming from, three minutes rebuttal for each. Okay. Thank you very much. And if you could put another minute back on the clock that I just used up by all this housekeeping. There is one more issue of housekeeping, if I might, Your Honor. Litton Loan Servicing was dismissed in the Habon matter, and for some reason it got spread across the entire matter, and they are not dismissed in Robinson, and they are present. Okay. Okay. I'm sorry, who is it that was dismissed? Litton Loan was dismissed in the Habon matter because that was modified. Okay. Okay. Your Honor, we represent the homeowners who in some instances, correct, granted, cashed out some of their equity in 2005 through 2008. One client we have invested her entire retirement in rental housing. Needless to say, she's back to work at age 65. The remainder, I venture to say, will never see equity in their homes during their lifetimes. When we filed these cases, we relied on what we thought was the black letter law that seems to have been interpreted in a manner that was a lot more flexible than we anticipated. The harsh reality we look at today is even though we believed every deed of trust had to have a beneficiary under the law, not so much. MERS became a nominee, and the courts have decided that's okay. No need for a real beneficiary. The entity that contracted and labeled itself a lender lent no money to the borrower, but the courts said, oh, that's okay. Even if they were gone the day after, that closing occurred. Of course, that normally happens when a loan is assigned. Correct. Yeah, sure. So nothing new there. The law, we believed it was new in the entirety of the things I'm reciting. I mean, the sort of the paperwork and the way the angels are dancing on the head of the pen, I understand, that's different. But the idea that the payment is being made to somebody who was not the original lender, that's not new at all. Okay. However, transferring it to several entities in which it was sliced by percentage points, we believe was quite different, that you could not look to any one holder of the note. The law of agency, again, MERS could be nominated as an agent for future unknown entities, something we certainly didn't contemplate when we filed this case. But the courts now have said, well, that's probably okay. The law that required the holder in due course of the note and the beneficiary of the deed of trust to be the same to initiate foreclosure appeared to us to be absolutely accepted law. And yet, not so much. We see that there has been all kinds of wiggle room and flexibility. As appellees say, that was just a tiny issue. As long as there are two entities who know each other somewhat and they both hold, one of them holds the note and the other one holds the deed of trust, those have been upheld. But the one black letter law that has not had any wiggle room, has not changed one bit, is that our clients were held to being current on their payment before they could complain about any of this. Appellees contend that my clients were in default. Therefore, they have no standing to complain about everything that occurred. Whether the contract lender wasn't really a lender, whether there was no beneficiary, whether the plaintiffs were receiving money from investors who were being defrauded, which our government has now proven over the last four years. Let me ask it this way, and staying away from the word standing, which gets us involved in all kinds of tangles about Article III and so on. So I'll just ask it in more sort of practical terms. As I understand it, all of your clients actually were or are in default, correct? Most of them. Not all. Not all. The Dalby clients were. Some of them were continued. Those against whom the foreclosures have taken place have all been in default. Is that right? That is correct. How does it make a difference to them, given that they are in default, how the MERS systems operate? Because if you had a conventional system under deed of trust, same answer. That is to say they lose the home. Except they would have been able to speak with the person who held the note. They would have been able to find that person. They would have been able to perhaps negotiate. When one of the most cataclysmic world economy burps had occurred during the Great Depression, you knew who the beneficiary was that held your note, and you could go to them and say, give me more time. If they didn't, they didn't. But you at least had that opportunity. You were able to find them and know who they were. You weren't dealing with a servicer, or you weren't dealing with someone who didn't have knowledge of the note. And we hadn't explored this area of the law, quite frankly, Your Honor, since the Great Depression when that did happen so often. And so these case law that occurred from 2009 when these were filed until now have gone through and defined some of those issues, and you're right. All of the wiggle room was on one side, but if my clients were in default, even though they lost all the equity, all the value in their home, even though it was the largest economic default or cataclysm in this century, they were not excused, and they have been accused of not having the right or having no difference. They defaulted, so that's it. Well, with respect to the part of the lawsuit that's here, the MDL part of the lawsuit, I mean, they may well have some claims about the origination of the loan, misrepresentation of the terms. They may have a, you know, sort of all the liar loan problems and so on, but that's not what's in front of us right now. Am I correct? What's in front of you is whether there's a timing issue, in my opinion. As I was getting to, I believe what the issues are is a timing issue, and I believe the other issue that Ms. Edwards will address is the false documents. What do you mean by it's a timing issue? Well, it's a – Timing of what with respect to whom? Well, with regard to prior to foreclosure, did the beneficiary and the holder of the note both exist as entities that could claim that they were united and had reunited the note? Or were they? And in the state of Nevada, yes. Now – In which case, Edelstein? Edelstein. But it was in the process of a mediation. I absolutely state that because the Supreme Court of Nevada has failed to just deal with the foreclosure issue, but mostly in the process of the mediation, which they have omitted 107.080 three times now to accommodate what they think should be the mediation process. But they did speak to that, and that's in the reply brief. They clearly said the same entity must hold or have the right to enforce the beneficial interest, as well as the deed of trust. So I believe there is still a timing issue. And even the Honorable Robert Clive Jones in the District of Nevada said, If you have not substituted a trustee who is now going forward with the foreclosure, you cannot go forward. One of the most conservative judges, I would say, in our district. No matter that our harsh reality is reduced to a timing issue, or reduced to a false documents issue, we should have been allowed to amend. The reason that the MDL process itself became apparent that it was not working was because state law was somewhat different in Arizona and in Nevada as it went through this process. Now, we didn't know that when we filed. We didn't know that when it was put into the MDL. They even objected many times, the defendants, when certain claims were put in, as you will see in the papers, because the court was putting together claims that made it very difficult to do one motion to dismiss. There had to be two motions to dismiss, and most of the time they dealt with the same issues. And they were split so that the district courts in Nevada, California, and Arizona believed that those were still in the purview of the MDL and should be addressed there, although the MDL denied it. So by that time, by the time we realized that they were denying that those claims were in front of them for that purpose, we were through the litigation, we were far into the litigation, and we believed that we had the right to appeal that issue because of the way it played out. We objected to the first split in Stoffels. And by the way, the defendants always say, well, Cervantes was the first one filed. It was Stoffels in the district court in Nevada. When you say you objected to the first split, what kind of split are you talking about now? When the MDL court in Arizona looked at the case and said, we are going to split the claims. Some will go to the transferring court, some to the transferring court. And that occurred in Stoffels. The Stoffels case was filed first before the Honorable Edward C. Reed in the District of Nevada. It was not the Cervantes case, even though that is repeatedly stated. But we believe that we pointed out the problems and the prejudices that the plaintiffs suffered because of the split and the not knowing which way it would be split until the courts then, when they're making their decisions, say, by the way, we can't, that's not in our jurisdiction. And so we were not able to. But to the extent you're objecting to the order of the JPML, that's mandamus. So that's not properly in front of us. I understand that the order of the JPML is not. I'm saying that the way that the district court, and I thought it was important to understand the purpose of multi-district litigation in order to say why it did not work in this situation. And so the briefing dealt with that. I mean, this is what it was for and the way this played out, certainly. Okay. Now, eating into your co-counsel's time, we'll make sure you get a chance to respond. Good morning, Your Honor, Justices, Valerie Edwards for appellants. I'm addressing the false documents claim, robo-signing claim, and the aiding and abetting claims. It is appellant's position that this Court should reverse the dismissal of those claims based on the fact that the district court abused its discretion in applying the Rule 12b6 motion for the motion to dismiss standard. Well, you know, if we're doing a 12b6, the standard is de novo. It's not abuse of discretion. Isn't that right? Correct. Yeah. So you would prefer, actually, it's better for you. I mean, if it's abuse of discretion, the district judge is greatly insulated. If it's just a straightforward 12b6, it's a matter of law. Right. Okay. And the current case out of Arizona Court of Appeals, the Stouffer v. U.S. Bank National Association, shows how the law was misapplied in the Arizona false documents claim, which was based on statute ARS 33-420. And the district court indicated that the false document claim couldn't stand for several reasons, one of which that the type of documents we complained of weren't the type covered by the statute. And the Arizona Court of Appeals has made it quite clear that those type of documents are the type of documents covered by the statute and that the plaintiffs have standing to pursue those claims. That case involved the same type of documents that we complained of and that we attached as exhibits to the consolidated amended complaint, which was an assignment of a deed of trust, notices of substitution of trustee, and notices of trustee sale. Those documents were false because in the assignment of the deed of trust, MERS transferred the note. MERS never has had any interest in the note that was set forth in the complaint. It was argued at oral argument. And that's just one false statement. The other thing that makes these documents false is that they were robo-signed, signed by people who didn't have authority to sign, and notarized in blank prior to being recorded. And that was alleged for every single document. And we produced copies of those documents as exhibits to the complaint and pointed out at oral argument the discrepancies in the signatures that certainly give rise to a plausible claim for relief for a false documents claim, showing that the documents are false. So it's our position that the district court should be reversed on the dismissal of those false documents claims. And that also leads to support for the Arizona Raffle Foreclosure Claim, which is a statutory nonjudicial foreclosure cause proceeding, and those proceedings have to be strictly applied and construed in order to give what very little protection remains to a borrower under that process. If you're foreclosing based on documents that are forged and contain false statements, it undermines the entire statutory nonjudicial foreclosure process. Under the improper foreclosure law, does your client have to show non-default? There is no ñ in order to challenge the foreclosure, you have to file an action before the trustee sale occurs. But I'm asking you, in order to succeed on a wrongful foreclosure action, does your client have to show that he or she is not in default on the payments? Under the Hearing v. Countrywide case, it's a statutory application. And that case doesn't mention default or non-default. Basically, it looks at whether or not this ñ I think ñ it's a yes or no question. I think you're saying that your client does not have to show default and can bring a wrongful foreclosure action, even in the absence of a showing by your client that they are current on their payments? Yes, Your Honor. Okay. So ñ But in Arizona, Arizona hasn't recognized a wrongful foreclosure claim. Is that right? No state court has recognized a wrongful foreclosure claim. But you're saying that if they go there and recognize such a claim as a wrongful foreclosure claim, then, in your view, there need not be an allegation of a lack of default? Yes, Your Honor. Under the Arizona scheme, it's statutory construction and whether or not the process was complied with. We've never alleged that you had to have the note or produce the note in order to foreclose, and that has been recognized in the Hogan case. So it's strict application of what the requirements are, what documents exist, and whether or not the step-by-step process was complied with. And here, it clearly wasn't complied with in Arizona, and it also ñ and it's our position that it wasn't complied with in Nevada either. So the dismissal of the wrongful foreclosure claims should be reversed as well. Going to the aiding and abetting claims, that was an aiding and abetting claim for wrongful foreclosure based on the MERS system and an aiding and abetting predatory lending claim. That was separately pled against certain defendants, which were GE Money Bank, Deutsche Bank, and Bank of America. And those facts related to the underlying predatory lending claim, even though loan origination claims had been split and put back into the originating courts, the MERS-based claims, which we alleged in the complaint, the predatory lending claim was facilitated and fed by the MERS system. And we adequately laid out the underlying claims, even though we couldn't have a predatory lending claim, you know, to wipe out the loans or anything like that, because they'd been split back into the originating courts. For the states that have specific statutory procedures that are laid out, is your claim premised on the fact that these strict procedural requirements were not complied with, or does it go back to the splitting the note theory? It's a combination of both. There's the splitting of the note theory that basically in Cervantes, this Court had said that you can have an unenforceable deed of trust if the note is split from the deed of trust, and there's no showing that MERS was the agent of the nominal holder of the deed of trust. But you're saying that the complaint relied not only on splitting the note theory, but also had specific allegations about the failure to comply with the State's procedural requirements? Is that what you're saying? Yes, Your Honor. For the Arizona claims, we did set that forth in the complaint. So the whole agency theory and the fact that MERS was not the agent of the lender was also set forth in the complaint. We had the benefit of the Court's decision in Cervantes when we drafted the consolidated amended complaint and pled the facts in accordance with the Cervantes decision. The district court in Arizona continued to look at it as a show-me-the-note case, which it wasn't. So there is an underlying tort of wrongful foreclosure based not only on the splitting of the note theory and particularly in Arizona, the fact that these foreclosures are based on forged robo-signed documents that contain a false statement related to MERS assignment of the note when they never have possession of the note. And the Mason v. Heff case of the Arizona Court of Appeals, which was also supplemented on September 3rd, indicates that you can have statutory violations of the foreclosure statute if you have false documents that are providing the groundwork for the foreclosure. So there is an underlying wrongful foreclosure claim. The aiding and abetting claim should not have been dismissed. There are facts laid out in the complaint related to the MERS system. There's quotes from the MERS documents themselves that talk about how MERS facilitates the rapid securitization and sale of the loans. That was what was driving this whole predatory lending piece and the piece on the end, which is the wrongful foreclosure. Okay. Now, you've used up all of your time. Why don't we hear from the other side, and we'll give both of you a chance to respond. Thank you. Good morning. Bobby Broach, Inc., counsel for Mortgage Electronic Registration Systems, Inc., and its parent company, MERS Corp. Holdings, Inc., and we have split our allotted 20 minutes among us with me, perhaps, to address the issues regarding the causes of action in the MERS system and Mr. Heffron to address issues relating to the transfer to the MDL and that decision by that judicial panel, and then finally counsel to speak to some of the trustee issues and the efficacy of those. I think to start, the cases relating to the MERS system here began as seven class actions in three federal courts, Arizona, Nevada, and California. And each of those seven class actions really had identical legal propositions that all rested on the naming of MERS as the beneficiary somehow rendered that deed of trust security instrument invalid and it rendered the loan unsecured. And this Court, the first of those was Cervantes v. Countrywide, which Judge Kielburg dismissed with prejudice and denied leave to amend. And this Court, 3-0 in Cervantes, affirmed that, noting that Judge Kielburg's denial of leave to amend to add new legal theories based on wrongful foreclosure was affirmed. The consolidated complaint and the causes of action in the consolidated complaint that was dismissed on appeal here rest on the challenge to the nonjudicial foreclosures on the fact that designating MERS as the beneficiary on the deed of trust instead of the lender and the subsequent operations of MERS rendered these deeds of trust unenforceable and these loans unsecured and voided out those nonjudicial foreclosures. That's their claim. The MERS system, the MERS system that is alleged in the consolidated complaint and alleged in Cervantes that ports to render these deeds of trust unenforceable and loans unsecured is really simply that the lender designates MERS as its nominee or agent, as the mortgagee on a mortgage, or as the beneficiary on the security instrument to secure the repayment. And while that system has been referred to as splitting the note when the holder of the note in one hand literally holds the note and the nominee or agent MERS holds that security instrument on behalf of that holder is what they call the MERS system. It's the splitting. It's not really a splitting. It's really one entity is holding the note and the holder of the note is designating a nominee or an agent in the form of MERS to hold the security instrument as the beneficiary of that security instrument. And the Cervantes court looked at that. In the Cervantes court, this court held that the plaintiff's claims that focus on the operation of the MERS system ultimately fail because the plaintiffs have not shown that the alleged irregularities associated with that system, which is the splitting of the note to a different person to hold that mortgage, violated any state law or in any way injured them. This court again in Zerosny said, quote, we have similarly held that under Arizona law, MERS may serve as a beneficiary in nonjudicial foreclosures. The case law going back 150 years has established the basic principle of agency law that the lender need not both hold the note and the deed of trust in order for them to be valid and enforceable. Circuit courts, First, Fourth, Fifth, Eighth, Tenth, Eleventh, have joined the Ninth Circuit in establishing that MERS may be designated as a beneficiary on a deed of trust and it may be designated as a mortgagee on a mortgage and more important that MERS as that beneficiary or that mortgagee may enforce the terms of that mortgage or beneficiary. Now, in regard to the wrongful foreclosures and in direct answer to your question, does the plaintiff need to not be in default to pursue wrongful foreclosures? The answer is unequivocally yes. And that goes for Nevada. Collins case, Supreme Court of Nevada established in 1983. That goes for Arizona. The cases are Orob versus Metro City's mortgage. A plaintiff can only state a claim for wrongful disclosure by alleging that he was not in default when the power sale was exercised or that he was able to tender the debt. Likewise, the law in California is also true. This is the so-called tender rule. That is, in order to pursue wrongful foreclosures for equity to beget equity, the plaintiff must come forward and either allege that he or she is not in default on that loan or tender the payments in order to pursue a wrongful foreclosure. And the law is similarly applicable, and that tender rule applies in California as well. In regard to your question regarding whether claims that are based on either MERS being named as a beneficiary or compliance with the statutes, the complaint that we're here on alleges the former. That is, these claims all rest on the fact that MERS is being named as the beneficiary. Indeed, that's what was transferred by the judicial panel to the District of Arizona for consideration in hearing claims that addressed just those issues. In fact, what they addressed was specifically sent back that various participants in MERS formed a conspiracy to commit fraud and that the security instruments are unenforceable or foreclosures are inappropriate due to MERS's presence as a party. So the issues that are both pled in the consolidated complaint, the issues that were sent to the MDL and Justice Teelberg to consider was, is naming MERS in a deed of trust such that it renders it invalid or unenforceable because MERS is serving as a beneficiary? And their presence, regardless of the loan, regardless of the transaction, it is MERS's presence and, therefore, the splitting, as they call it, of the note from that mortgage. That is the underlying basis. That's what's been alleged in the complaint in terms of why those foreclosures and every other cause of action were inappropriate. Now, you've used just over seven minutes, so I don't know how you are deciding among yourselves to divide up, but I thought I'd alert you to where you are. Thank you for that, and I'm going to talk faster. And if the others are shortchanged, I guess you guys will deal with it in the parking lot. That's where justice is meted out. I did, though, want to, in addition to addressing the wrongful foreclosure action, also address the claim that's count one, which is the claim for the slander of title under the Arizona statute. That is a claim for violation of 33-420. And the gravamen, and this only applies to seven or eight Arizona plaintiffs, and the gravamen of that is a slander of title claim that prohibits one from the wrongful recording of a false interest in real property by causing documents that contain material misstatements or false claims or are otherwise invalid. The purpose of that act is to protect owners from actions for clouding title. The consolidated complaint, which you'll find in paragraph 59, alleges that assignments of mortgages and substitutions of trustees were wrongfully recorded as a false interest in a real property because they were robo-signed, they were false claims, or somewhat invalid. But regardless, all of these false documents allegedly are all based, all of them, on MERS's status as making assignments as this beneficiary when MERS had no interest in the deed of trust or had no interest in the note. And so these false documents were recorded, arises, as Judge Kielburg found, from the splitting of this note from the deed of trust and rendering that note unenforceable. And Judge Kielburg rightfully concluded there is no legal support, and I'm quoting, that the MERS system is defective so as to render every one of these deeds of trust unenforceable and thus concluded that there was nothing false about the interest recorded on the public land records for Arizona. And as I mentioned, this Court has recognized in its Zerosny decision that you have held that under Arizona law, MERS is a valid beneficiary who may foreclose. And so the recording of those documents are not false claims asserting interest because they were somehow naming MERS as a beneficiary. And in regard to the so-called robo-signing, first the court noted, district court noted that the complaint failed to plead any facts in support of that conclusion. But even if the persons signing those mortgage assignments and substitution of trustees were not authorized to do so, and indeed perhaps the facts were pled to show same, this would not violate, I mean, this would not be a false document. This would not render that document void. It would simply render it voidable, which means it's still a valid and binding transaction. And so Judge Kielburg. Now, you've now got 9 minutes and 20 seconds left for all three of your remaining colleagues. I'm going to. Mr. Heffron actually slipped me a note to say I could have an extra three minutes. So I think I'm still all right with him. But I will finish. I'm just trying to protect you. I appreciate that. I just wanted to point out and highlight for the Court that in regard to Count 1, that regardless of the Stauffer decision and whether or not these documents come within, that is mortgage assignments and substitutions of trustees come within the ambit of the statute, even if they do, this Court should affirm because the recording of those documents did not assert a false claim or false interest in the real property on which they were recorded. And I thank the Court for its time and its warnings. May it please the Court, good morning. My name is Thomas Heffron. I'm going to address a couple of procedural issues and I'll be brief. After me, a couple of counsel representing trustees will speak even more briefly than I. The two issues I wanted to address, one I take at this point has been conceded. That point was whether or not there could be a challenge to the Constitution of the MDL, the selection of Arizona and the selection of Judge Tilburg. As Your Honor correctly pointed out, that could only be reviewed, if at all, by mandamus. This is not a writ of mandamus, nor would it qualify for once. I'm not sure I heard a concession. That's my view of the law, but I'm not sure I heard a concession. Your Honor, I guess I would just make the point that we argued this in our brief and they didn't respond in their reply, pointing out that there's some exception. Nor did they seek this to be treated as a writ. And we pointed out why there's every reason in the world why it should not be treated as a writ, including especially the delay, since the entire proceeding evolved and got wrapped up and only then did they challenge. So it would be too late. The issue I want to focus instead on is the second procedural point that they made, and it came up in both arguments, which is whether there's an appropriate challenge, whether it's appropriate to challenge Judge Tilburg's administration of the case. And specifically that, as Your Honor's know, when the cases were constituted, when the Mdels constituted, the panel, at the suggestion of some of the parties, actually split the lawsuits. They remanded back to the transferor court those aspects of the cases that did not deal directly with the operation and constitution of MERS, and instead were primarily related to. The order says it was remanding, but, I mean, just words. Nothing was done, right? I mean, that's not the premise. JPL doesn't think that's its function, to actually direct a split, right? It said, you know, we're remanding these origination claims, and that was it. That's what the order said. And under the orders then that Judge Tilburg issued, he just was trying to interpret the panel's order and explain what claims were still before him and which ones were not. Physically, what happened in this docket, generally speaking, was the entire file went from the transferor court to Judge Tilburg. And then he advised the transferor court, which claims. I don't know if that's accurate either. I mean, that's the way Judge Tilburg construed it. Correct. I mean, JPL didn't say we're transferring the entire file or send the entire file. I mean, you're speaking in metaphors, because, you know, no file was actually sent to Phoenix, was it? Physically, what happened was, Judge, that nothing happened in the transferor courts until Judge Tilburg instructed the transferor court, no, you know what? I don't have these claims. You have these claims. In which case, at that point, the transferor courts picked those files up and picked those claims up. All I'm saying is, you know, it's not as definitive as you're laying out in your narrative. It's all very confusing. Well, under the rules of the JPML, the order of remand at the time by the JPML was to be transmitted to the transferor court. And to the extent it wasn't done, Judge Tilburg directed his clerk to notify the transferor court that there was more work to do with respect to the file. And then, as we saw, if you look at the history of each of the various cases that were there Well, everybody knew, I think, that the panel's order was ambiguous in that sense. In other words, what's an origination claim, right? What is it? In fact, there's some indication that Judge Tilburg's interpretation as applied to individual cases is somewhat contradictory. I mean, even he had some problem figuring out what was what. So, and then there was no direction exactly what claims were remanded and which ones went to the MDL court, right? And, you know, so I can understand Judge Tilburg felt it incumbent upon somebody to interpret that order. It did. And that's what he did. I don't know whether, you know, maybe each individual transferor court could interpret it differently if they wanted to. There's nothing that says Judge Tilburg's order controls the transferor court, is there? No, there's not. But I would point out to the court that very late in the MDL, there was a case called the Philpot case in which the litigants, the plaintiffs, went back to the panel and said, I don't agree with the interpretation of which cases went back to Alabama, which parts of the case went back to Alabama, which parts stayed here. And the panel, while not saying specifically that Judge Tilburg had done the right thing, specifically noted that Judge Tilburg had spent considerable efforts reviewing plaintiffs' claim in the docket to determine which relate to Formation and Operation of Burns and which do not. And then went on and actually affirmed Judge Tilburg's decision in the Philpot case. And that was the opinion from the MDL in August 12th of 2011. So plainly, at least at that point, the panel recognized that Judge Tilburg was doing that to administer the docket. And we contend well within his discretion, as designated, as delegated to him by statute as well as by the panel, to in fact administer the case and determine for the litigants and for the court and the other court exactly which claims should go forward in front of him. Of course, I agree, Judge Tashima, that the panel had actually issued the remand, but it did not, in the case of the actual, in the first instance or in connection with the CTOs, it did not actually designate which count remained, which count moved. Somebody had to do that. And it's our position, and it was set forth in the brief, that Judge Tilburg did it. And this was, you know, well within his discretion in administering the case under 1407. I would also point out that in almost every instance, and we detail this in the brief so I won't linger on it, in almost every instance, the plaintiffs did not even oppose or even inform Judge Tilburg of what the position was about which claims stayed and which claims went. Well, did they have an opportunity to do that? Absolutely. The procedure order that Judge... In what way? The procedure order that Judge Tilburg issued was that in every instance in which a slug of cases came to him, by a CTO in most instances, obviously first, it happened in the first instance as well, that within a certain period of time, the MERS defendants were obligated to file a motion for the designation of which claims were before Judge Tilburg and by default which claims were still in the transferor court. And in each instance, the MERS defendants did exactly that. Every party had an opportunity under their order to comment on whether they agreed. In almost all instances, the plaintiffs said nothing, even though it was their claim. And so, and in some instances, some defendants gave their opinion, sometimes in agreement, sometimes not. Judge Tilburg then issued an order. And in all instances, we had the odd situation where the defendants in the court were trying to figure out what the plaintiff's claims were and the plaintiffs said nothing. Didn't explain why they thought the claims should go or should stay. Or had already gone, I should say. So in all those instances, they certainly have not preserved their right to now stand up in front of the court and complain about what happened. To the extent there's inconsistency, it may well be the result of the fact that they did nothing to try to explain to Judge Tilburg that what he was doing was inconsistent. They're the master of their complaint. Presumably they agreed with the inconsistent results because they planned to litigate the case consistent with what Judge Tilburg had, what had been proposed by the Mertz defendants. Finally, and I'll finish on this, this is also, these complaints also are, we would contend, harmless error. The bottom line is that while they have a dispute or complaint in certain instances of whether the claims had been remanded or maybe had been sent to the MDL court, in each instance, the claims were somewhere. They went somewhere. They actually went to district judges, and again, if you look at the history of the cases, in almost all instances, what happened was the transferred claims obviously here got dismissed. The retained and remanded claims also got dismissed. So a federal judge decided the issues. In some instances, they perhaps might have preferred that a different federal judge decide the issues, but no one has the right to decide which federal judge decides the issues. This is not an instance where they have ever demonstrated any prejudice by virtue of any error that Judge Tilburg might have committed. So because it's well within its discretion to have administered the order, because the panel recognized in the Philpott case. I think we have the point, and you're now for, on behalf of all of you, a minute over time, and you've got two more people yet to come. Thank you, Your Honor. And I think Mr. Reynolds will speak briefly for the two remaining people. Let's put two minutes on the clock, and if that's not enough, speak to them. Good morning, Your Honors. I promised a minute, so I hope I can keep the thought. I represent MTC Financial Inc., DBA Trustee Corps. I'm only arguing on the Nevada matters, which were transferred. We had about eight or nine cases somewhat hijacked. We weren't even aware of the fact we were in these cases until Judge Tilburg, the complaint was amended. The only causes of action against trustees are the wrongful foreclosure under Nevada law and the slander of title. Let's deal with slander of title. It's rather obvious. Slander of title requires the pleading of special damages. We pointed out they didn't plead special damages, nor did they offer to amend to plead special damages. And there's nothing false about recording a substitution of trustee, a notice of default, a conceded default, or a foreclosure sale. Trustees deed upon sale states that the property was sold, reverted back to the beneficiary, or went to a third party. Whether they have some other basis to challenge that sale, procedural or otherwise, is irrelevant to the slander of title. In most states, you have an absolute privilege anyway, such as California, against slander of title for trustees. So that's really not an issue. They don't have anything. The wrongful foreclosure cause of action in California, I mean Nevada, we have to be talking about is the old statute before October 2011. In that case, before that, there was no requirement that the substitution of trustee be recorded before the notice of default. There's multiple cases on that. Judge Jones, by way of example, has granted summary judgment motions to myself and others after that. The issue is whether somebody was properly the agent. The appellants in their argument in the transcript, in the argument for Judge Teelbricks, basically said that their entire wrongful foreclosure case was derivative of the MERS case. So the court finds that MERS can substitute a trustee or that the MERS process is appropriate, then the foreclosure case goes away. And finally, Your Honor, in unmarked cases, all but two of these cases, the property has already been foreclosed. There's no damage claim in Nevada for wrongful foreclosure. The only remedy is to set aside the sale. And a trustee as a matter of law is not a necessary party. A trustee as a matter of law in Nevada, and the district court cases are coming out left and right, does not have an interest in real property. How can you have an interest in real property if you can be substituted out at the whim of the beneficiary? You're simply an agent. You don't own anything. So we are saying we don't belong in this case, no trustee belongs in any of these cases, and I submit. Thank you. We've got one more. Thank you, Your Honors. May it please the Court. My name is Christina Wang, and I represent Fidelity National Taito Insurance Company. Fidelity National Taito Insurance Company is only in the chain of Taito as the original trustee under certain deeds of trust of defaulting borrowers in this appeal. Fidelity National Taito Insurance Company was substituted out and replaced with foreclosure trustees. It was neither the original lender, the foreclosing beneficiary, or the foreclosing trustee, but it has been indiscriminately and continues to be indiscriminately lumped in with all the other defendants' appellees in this matter and other matters. Fidelity National Taito Insurance Company's only role was limited and discreet in these matters. It owed no common law duties to the homeowners as the original trustee, other than those specifically stated in the deed of trust, which are to foreclose upon default and to reconvey the deed of trust upon satisfaction of the underlying debt. In these matters, neither duty was ever triggered because the foreclosing beneficiaries elected to substitute Fidelity National Taito Insurance Company out as trustees and replace it with their own foreclosing trustees. Hence, there is no basis to assess liability against Fidelity National Taito Insurance Company or any other original trustee, and the district court did not err in dismissing plaintiff's amended complaint against Fidelity National Taito Insurance Company. Thank you. Okay. Thank you very much. Now, you used up all your time. How about two minutes each for rebuttal? And we'll see how that goes. Okay. Well, I just said two minutes each. That means you get four minutes. Okay. You may or may not. You don't need to use it all if you don't need to. Thank you. Even if you put aside the whole MDL, JPML transfer debacle, the district court still erred in dismissing the complaint. On the claims that it had before it, it didn't assume that all the facts alleged in the complaint were true. It substituted facts. It made legal conclusions. It totally misapplied the Twombly standard. So, and we argued in the beginning that the aiding and abetting and the false documents claims were misconstrued and the law was misapplied. Contrary to Mr. Breschon, counsel for Merz's argument, that the false documents robo-signing claim is a slander of title claim. It's not a slander of title claim related to the false documents. It's a penalty claim based on the statute. And the statute and the case law is clear that if you record a document such as an assignment of a deed of trust or a notice of trustee sale or a substitution of trustee that contains a false statement or that is forced, that's a false document that imposes penalty liability under the statute. And it's not just Merz's status as the beneficiary that gives rise to that claim. It's the fact that the documents themselves are robo-signed, forged, and that is clearly set forth in the complaint and in the exhibits to the complaint. In short, we pleaded the robo-signing allegation and backed it up with plenty of evidence. That claim should not have been dismissed, nor should it have the wrongful foreclosure claim. And basically, we allege that Merz is not the agent. And under Cervantes, that can allow the wrongful foreclosure claims to move forward on the merits, default or not. Whether it all goes down to whether or not the loan is still secured. It's our position that the loan is no longer secured and that they can collect on the note, but they can't take these people's houses in a foreclosure action. In terms of the tender rule, Arizona doesn't recognize the tender rule, and that's in the early Greenberg case. On the arguments of NTC financial and fidelity national title, the trustee is acting under documents that are not legal. There's no basis for the foreclosure given the fact that the loan is no longer secured by the property. So under NRS 107080 and under 30 the Arizona statute 33801, the trustee is liable as part of that chain. So we would urge this Court to reverse the dismissal of the consolidated amended complaint and allow the case to proceed on the merits. Thank you. Okay. Thank you. Thank both sides, all lawyers, for their argument. The case of MERS 11-17615 is now submitted for decision. And that concludes our oral arguments for this morning.
judges: Tashima, Fletcher, Nguyen